UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14152-CIV-MARRA

CURTIS BROWN,

Plaintiff,

vs.

BRIDGESTONE RETAIL OPERATIONS, LLC,
a Delaware limited liability company, d/b/a
TIRES PLUS; DAVID PERRY, individually
and DAVID TUMA, individually,

Defendants.

_____/

## OPINION AND ORDER

This cause is before the Court upon Defendants' Motion to Dismiss or,

alternatively, to Stay Action and Compel Arbitration (DE 17).  The Motion is fully

briefed and ripe for review.  The Court has carefully considered the Motion and is

otherwise fully advised in the premises.

I.      Background

Plaintiff Curtis Brown ("Plaintiff") filed a three-count Complaint (DE 1) against

Defendants Bridgestone Retail Operations, LLC ("BSRO"), David Perry ("Perry") and

David Tuma ("Tuma") (collectively, "Defendants") pursuant to 42 U.S.C. § 1981 for race

discrimination (count one); hostile environment (count two) and retaliation (count three).

On September 10, 2003, Morgan Tire & Auto, Inc. ("MTA Inc.")[1] implemented

an Employee Dispute Resolution Plan ("EDR Plan") for its non-union employees.

---

[1] As of 2001, BSRO owned a majority interest in MTA Inc. (Gina Brooks Decl. at ¶ 10, DE 17-1; David Truman Hyde III Decl. ¶ 5, DE 23-1.)

(Brooks Decl. ¶ 8.)[2]  MTA, Inc. was converted into MTA, LLC on January 5, 2009. (Hyde Decl. ¶ 6.) MTA, LLC merged into BSRO on December 31, 2013.  (Brooks Decl. at ¶ 11; Certificate of Merger, Ex. 2 to Brooks Decl.)  At that time, MTA, LLC was already a wholly owned subsidiary of BSRO. (Hyde Decl. ¶ 8.)

MTA, LLC hired Plaintiff on February 23, 2009 as a technician/installer. (Brooks Decl. at ¶ 12.)[3]  He worked at MTA, LLC, through the merger with BSRO, until May 2016.  (Id. at ¶ 13.)  As part of Plaintiff's onboarding process on February 19, 2009, Plaintiff signed a New Employee Acknowledgment and Agreement to Employee Dispute Resolution Plan form, confirming that he had the opportunity to review the EDR Plan booklet as well as his agreement to be bound by the EDR Plan. (Ex. B, DE 17-2.)

The Acknowledgement and Agreement form signed by Plaintiff stated the following:

> I understand and agree that any employment-related legal dispute I may have with *Morgan Tire & Auto, Inc.* (*the 'Company'*) including, but not limited to, any dispute concerning my application for employment, my employment if I am hired, and the termination of my employment if I am hired must be resolved exclusively through the Company's Employee Dispute Resolution Plan. I therefore understand and agree that I must submit all disputes covered by the EDR Plan to mediation and, if necessary, to final and binding arbitration under the terms of the EDR Plan. I understand and agree that disputes covered by the EDR Plan include, but are not limited to, claims under federal, state or local civil rights statutes, laws, regulations or ordinances and federal, state, or local common law contract and tort claims.
>
> I hereby waive any right that I may have to resolve disputes covered by the EDR Plan through any other means, except as set forth in the EDR Plan, including a court case and/or a jury trial.

---

[2]   In considering a motion to compel arbitration, the Court may consider affidavits.  See Samadi v. MBNA America Bank, N.A., 178 Fed.Appx. 863, 866 (11th Cir. 2006).

[3] Plaintiff previously worked for MTA, Inc., but that period of employment has no relevance to this case.

I acknowledge that I have had an opportunity to review the booklet containing the EDR. Plan, a copy of which I received before signing this Acknowledgment and Agreement. The EDR Plan fully defines the disputes that are covered, describes the procedures for mediation and arbitration and sets forth the remedies I may obtain.

I understand and acknowledge that my agreement to be bound by the EDR Plan is made in exchange for the Company employing me and the Company's promise to mediate or arbitrate disputes covered by the EDR Plan, as fully described in the EDR Plan.

I understand and acknowledge that I will not be allowed to begin working until I have signed and dated this Acknowledgement and Agreement and that the Company is reasonably relying upon all of my representations and statements related to the EDR Plan in making its decision to employ me, and, but for those representations and statements, the Company would not choose to do so. I also understand that my employment with the Company will be at-will and that this Acknowledgment and Agreement does not affect at-will employment status.

(Id.) (emphasis added).

The cover page of the EDR Plan booklet states:

THE EMPLOYEE DISPUTE RESOLUTION PLAN IS THE EXCLUSIVE MEANS OF RESOLVING EMPLOYMENT-RELATED DISPUTES. ALL PERSONS WHO APPLY FOR EMPLOYMENT, ACCEPT EMPLOYMENT, CONTINUE WORKING FOR, OR ACCEPT ANY PROMOTIONS, PAY INCREASES, BONUSES, OR ANY OTHER BENEFITS OF EMPLOYMENT FROM MORGAN TIRE & AUTO, INC. AGREE TO RESOLVE ALL SUCH DISPUTES THROUGH THE MEDIATION AND BINDING ARBITRATION PROCESS DESCRIBED HEREIN INSTEAD OF THROUGH THE COURT SYSTEM.

(Ex. 1 to Brooks Decl.)

The initial paragraph to the EDR Plan states:

**Application for employment, initial employment, continued employment, or acceptance of any promotions, pay increases, bonuses, or any other benefits of employment on or after the effective date of the Morgan Tire & Auto, Inc. Employee Dispute Resolution Plan constitutes consent and agreement by both the Employee and the Company to be bound by the following terms**.

3

(Id.) (emphasis in original)

"Company" is defined in the EDR Plan as follows:

> Morgan Tire & Auto, Inc. ("MTA") including, but not limited to all entities having or having had any ownership interest in MTA, or in which MTA has or has had any ownership interest, and without limitation, all parent, subsidiary, sister, related or affiliate companies, or divisions of MTA, and any and all partners, members, shareholders or owners thereof, together with the officers, managers, supervisors, employees and agents, whether in their official, corporate or individual capacities, of each and all of the foregoing entities, and their respective heirs, executors, personal representatives, administrators, predecessors, successors and assigns.

(Id.)

In moving to dismiss or compel arbitration, Defendants argue that (1) the parties entered into a binding arbitration agreement; (2) Plaintiff's claims are covered by the EDR plan and (3) numerous courts have enforced this plan.  Plaintiff responds that the New Employee Acknowledgment only refers to employment-related legal disputes with MTA, Inc., not MTA, LLC.  Plaintiff also contends that there are no provisions in the agreement about successors in interest or allowing a party to assign the right to compel arbitration.

> II.     Discussion

The Supreme Court has articulated a strong federal policy favoring arbitration agreements. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); see also AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011) (the Federal Arbitration Act reflects a "liberal federal policy favoring arbitration").  One of the purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., is to "ensure judicial enforcement of privately made agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). As such, arbitration agreements must be

"rigorously enforce[d]" by the courts. Id. at 221. Because arbitration is a matter of contract, however, the FAA's strong pro-arbitration policy only applies to disputes that the parties have agreed to arbitrate. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). "[C]ourts [ ] place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." Concepcion, 563 U.S. at 339 (2011) (citations omitted).

Plaintiff does not challenge that he entered into an arbitration agreement or that his claims are within the scope of the agreement. Plaintiff's argument is that BSRO, a non-signatory to the arbitration agreement, cannot compel him to submit to arbitration. The Court rejects Plaintiff's contention.

First, the conversion of MTA, Inc. to MTA, LLC did not change any existing rights or obligations. Vanguard Car Rental USA, LLC v. Suttles, 190 So. 3d 672, 676 (Fla. Dist. Ct. App. 2016) (a conversion from one corporate identity "is not determinative of an entity's existing rights and obligations"). Florida Statute § 607.11935 provides that, in a conversion, "every contract right possessed by, the converting eligible entity remain the property and contract rights of the converted eligible entity without transfer, reversion, or impairment." Fla. Stat. § 607.11935(1)(a). Indeed, a converted entity is "[d]eemed to be the same entity without interruption as the converting eligible entity." Id. at § 607.11935(1)(h)(2). Based on this law, Plaintiff's signed agreement with MTA, Inc. has the same effect as if Plaintiff had signed an agreement with MTA, LLC.[4]

---

[4] Even putting aside Florida law on conversions, an employee can be compelled to arbitrate when the employment agreement contained the wrong employer's name due to a scrivener's error. Garcia v. Mason Contract Prod., LLC, No. 08-23103-CIV, 2010 WL 520805, at *6 (S.D. Fla. Feb. 9, 2010).

Second, BSRO falls under the definition of "Company" in the EDR Plan.  The definition of "Company" includes entities with an ownership interest in MTA, Inc. and all parent and successor companies.  The evidence provided demonstrates that BSRO had a majority ownership interest in MTA, Inc. (Brooks Decl. at ¶ 10; Hyde Decl. ¶ 5.)  The evidence also demonstrates that MTA, LLC. which had been converted from MTA, Inc. in 2009, merged with BSRO, its parent company, in 2013.  (Hyde Decl. ¶ 8.) And, of course, BSRO became a successor company after it merged with MTA, LLC.  See MBlock Inv'rs, LLC v. Bovis Lend Lease, Inc., 274 So. 3d 504, 509 (Fla. Dist. Ct. App. 2019) ("Florida courts have generally defined a successor as 'he that followeth or cometh in another's place' or, more recently, as one 'who follows or takes the place another has left and sustains the like part or character.'"); Black's Law Dictionary (11th ed. 2019) (defining "successor" as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation"). Here, when the express language of the arbitration agreement includes claims with successors, it is appropriate for a successor to enforce the arbitration agreement.  Bolanos v. First Inv'rs Servicing Corp., No. 10-23365-CIV, 2010 WL 4457347, at *2 (S.D. Fla. Oct. 29, 2010) (a nonparty, such as a successor, can enforce an arbitration agreement).

For all these reasons, the parties must arbitrate these claims.   Finally, consistent with the terms of 9 U.S.C. § 3, the Court chooses to stay this action, as opposed to dismissing it, pending the resolution of the arbitration proceedings.

III.     Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants'

Motion to Dismiss or, alternatively, to Stay Action and Compel Arbitration (DE 17) is

**DENIED IN PART AND GRANTED IN PART**.  The Motion to Dismiss is **DENIED.**

The Motion to Stay Action and Compel Arbitration is **GRANTED**.

The parties are ordered to arbitrate this dispute. The case is **STAYED** pending

completion of arbitration proceedings. The Clerk shall **ADMINISTRATIVELY**

**CLOSE** this case and all pending motions are **DENIED AS MOOT**. Either party may

move to re-open the case after the arbitration is completed if further judicial relief is

required.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County,

Florida, this 4th day of September, 2020.

KENNETH A. MARRA
United States District Judge